JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BARRY BAKER, Individually and on Behalf of All Others Similarly Situated,

**DEFENDANTS**

TEVA PHARMACEUTICAL INDUSTRIES LTD., EREZ VIGODMAN, EYAL DESHEH, and YITZHAK PETERBURG,

**(b)** County of Residence of First Listed Plaintiff _Union County_
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government **Plaintiff**
- ❏ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | | | ❏ 790 Other Labor Litigation | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 791 Employee Retirement Income Security Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§78j(b) and 78t(a), 17 C.F.R. § 240.10b-5

Brief description of cause:
Violations of the Securities Exchange Act of 1934

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
8/30/2017

SIGNATURE OF ATTORNEY OF RECORD
*Keith*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

BARRY BAKER, Individually and on Behalf of All
Others Similarly Situated,

           v.

TEVA PHARMACEUTICAL INDUSTRIES LTD.,
EREZ VIGODMAN, EYAL DESHEH, and YITZHAK
PETERBURG,

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )


| 8/30/2017 | Keith R. Lorenze | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-600-2817 | 212-202-3827 | klorenze@rosenlegal.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:___101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046_____

Address of Defendant:___5 Basel Street, P.O. Box 3190, Petach Tikva 4951033 Israel_____

**Place of Accident, Incident or Transaction:**___Pennsylvania_____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☒  No☐

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☐

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,__Keith R. Lorenze_____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE:__8/30/2017_____   _____   __205689_____

Attorney-at-Law                        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:__8/30/2017_____   _____   __205689_____

Attorney-at-Law                        Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:    101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046

Address of Defendant:    5 Basel Street, P.O. Box 3190, Petach Tikva 4951033 Israel

Place of Accident, Incident or Transaction:    Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐   No☒

Does this case involve multidistrict litigation possibilities?        Yes☒   No☐

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐   No☐

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐   No☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?        Yes☐   No☐

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐   No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1.  ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2.  ☐ FELA
3.  ☐ Jones Act-Personal Injury
4.  ☐ Antitrust
5.  ☐ Patent
6.  ☐ Labor-Management Relations
7.  ☐ Civil Rights
8.  ☐ Habeas Corpus
9.  ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
      (Please specify) _____

B.  *Diversity Jurisdiction Cases:*

1.  ☐ Insurance Contract and Other Contracts
2.  ☐ Airplane Personal Injury
3.  ☐ Assault, Defamation
4.  ☐ Marine Personal Injury
5.  ☐ Motor Vehicle Personal Injury
6.  ☐ Other Personal Injury (Please specify)
7.  ☐ Products Liability
8.  ☐ Products Liability — Asbestos
9.  ☐ All other Diversity Cases
      (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,  Keith R. Lorenze _____ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE:  8/30/2017 _____        _____ (signature)        205689 _____

Attorney-at-Law                          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  8/30/2017 _____        _____ (signature)        205689 _____

Attorney-at-Law                          Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------------x

| | |
|---|---|
| BARRY BAKER, Individually and on Behalf of All Others Similarly Situated, | : |
| | : |
| | : |
| Plaintiff, | : Civ. Action No. |
| | : |
| - against - | : **CLASS ACTION COMPLAINT** |
| | : **FOR VIOLATION OF THE** |
| TEVA PHARMACEUTICAL INDUSTRIES LTD., | : **FEDERAL SECURITIES LAWS** |
| EREZ VIGODMAN, EYAL DESHEH, and YITZHAK | : |
| PETERBURG, | : **DEMAND FOR TRIAL BY JURY** |
| | : |
| Defendants. | : |
| | : |

-------------------------------------------------------------------x

Plaintiff Barry Baker, individually and on behalf of all other persons similarly situated ("plaintiff"), by his undersigned attorneys, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and on information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Teva Pharmaceutical Industries Ltd.'s ("Teva" or the "Company") public documents, conference calls and announcements, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Teva, analysts' reports and advisories about Teva and information obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased or otherwise acquired Teva American Depositary Shares ("ADSs") on the New York Stock Exchange ("NYSE") and/or common stock on the Tel Aviv Stock Exchange ("TASE") between November 15, 2016 and August 2, 2017, both dates inclusive (the "Class Period"), for violations of §§ l0(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule l0b-5 promulgated thereunder, against Teva and certain of its current and former top officers.

2.     Defendants made false statements and omissions to investors, which misled investors by presenting a materially false and misleading picture of Teva's business, financial results, and operations, by, among other things, failing to disclose and actively concealing the negative impact resulting from the acquisition and integration of Actavis Generics on the Company's financial results and business prospects.

3.     As information about defendants' fraud was revealed to investors, the Company's share prices dropped precipitously. Specifically, on August 3, 2017, Teva announced lower than anticipated second quarter results due to the performance of its U.S. generics business. The Company further recorded a goodwill impairment charge of $6.1 billion in the second quarter of 2017 related to the Company's acquisition of Actavis. Defendants also indicated that Teva's U.S. generics business, due to "accelerated price erosion" and delays in U.S. generic launches, was a key factor in lowering Teva's future guidance and cutting its dividend by 75%. On this news, Teva shares dropped from a closing price of $31.25 per ADS on August 2, 2017 to a new 52-week low closing price of $20.60 per ADS on August 4, 2017, on heavy two-day trading volume.

4.     Through this action, plaintiff seeks to recover the damages that plaintiff and other members of the Class (as defined below) have suffered as a result of defendants' violations of

federal securities laws and the resultant decline in the value of their investments in Teva.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to § §10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule l0b-5, promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 §§ 1331 and 1337, and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act and 28 U.S.C. § 1391(b), as Teva's principal U.S. executive offices are located within this Judicial District.

8.      In connection with the acts, conduct, and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.      Plaintiff Barry Baker acquired Teva ADSs as set forth in the attached certification at artificially inflated prices and was damaged upon the revelation of the alleged corrective disclosures.

10.      Defendants Teva develops, manufactures, markets and distributes genetic medicines and a portfolio of specialty medicines worldwide. Teva is the largest generic drug manufacturer in the world and one of the 15 largest pharmaceutical companies worldwide. Teva is incorporated in Israel and the Company's principal executive offices are located at 5 Basel Street, P.O. Box 3190, Petach Tikva 4951033 Israel. Teva's ADSs trade on the NYSE under the

same ticker symbol. Teva's U.S. wholly-owned subsidiary, Teva Pharmaceuticals USA, Inc., has its principal offices at 1090 Horsham Road, North Wales, Pennsylvania, 19454.

11.     Defendant Erez Vigodman ("Vigodman") was Teva's President and Chief Executive Officer ("CEO") from February 11, 2014 through February 6, 2017, and a director of Teva from June 22, 2009 through February 6, 2017.

12.     Defendant Eyal Desheh ("Desheh") was Teva's Chief Financial Officer ("CFO") from July 2008 through June 30, 2017 (except during the period of October 30, 2013 through February 11, 2014), Teva's Group Executive Vice President from 2012 through June 30, 2017, and Teva's interim CEO from October 30, 2013 through February 11, 2014.

13.     Defendant Yitzhak Peterburg ("Peterburg") was Teva's Chairman of the Board from January 2015 through February 6, 2017, and has been Teva's interim President and CEO since February 6, 2017.

14.     The defendants referenced above in paragraphs 11-13 are sometimes referred to herein as the "Individual Defendants."

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS ISSUED DURING THE CLASS PERIOD

15.     The Class Period begins on November 15, 2016, when Teva filed two reports on Form 6-K with the SEC reporting the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 6-K" and "Q3 2016 Press Release").

16.     In the Q3 2016 6-K, Teva made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> Significant highlights of the third quarter of 2016 included:
>
> - On August 2, 2016, we consummated the Actavis Generics acquisition. ***The acquisition had a significant impact on our***

> *generic medicines segment, expanding our product portfolio, R&D capabilities, product pipeline, and global operational network.* [1]

17.      In the Q3 2016 Press Release announcing the Third Quarter 2016 results, Defendant Vigodman stated:

> This has been a year of transition for Teva, underscored this quarter by the close of our strategic acquisition of Actavis Generics, which had significant contribution to our results. Actavis will continue to contribute in a meaningful way to the future growth of our generics business through the strengthened R&D capabilities and complementary pipeline and portfolio, and enhance our leadership in an increasingly evolving industry.

18.      In a conference call the same day, Teva made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> [Vigodman:] The completion of the Actavis acquisition strengthens and broadens our R&D capabilities, and highly complements our product pipeline, product portfolio, geographical footprint and operational network. It enhances Teva's leadership in an evolving competitive landscape and massive consolidation across our customer base. *In addition, our integration plans with the Actavis generics business are on track.*
>
> *                *                *
>
> [Sigurdur Olafsson, Teva's President and CEO, Global Generic Medicines:] On August 2, we completed the strategic acquisition of Actavis generics. *The result is a much stronger, more competitive Teva that is best positioned to thrive in an evolving global generics marketplace.*

19.      In response to a question about the Actavis transaction, Olafsson stated:

> The closing of the Actavis transaction has gone very smoothly since day-one with no operational disrupter. While we were disappointed at the delays with antitrust review, the time allows the integration teams at Teva and Actavis Generics to work diligently to plan for integration of the two companies in order to ensure that combined company would be fully operational immediately as on closing of the transition. As a result, Teva was able to begin capitalizing immediately on the benefits offered by the acquisition of Actavis Generics. This included optimizing our R&D

---

[1] Emphasis has been added throughout unless otherwise noted.

activities, harmonizing our customer contracts and relationships, and realizing economies of scale with our purchase.

20. On December 5, 2016, Teva filed a report on Form 6-K with the SEC announcing the abrupt resignation of Sigurdur Olafsson, the CEO and President of Teva's generic segment. In the December 5, 2016 6-K, Teva made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> Erez Vigodman, Teva's President and [CEO stated:] ... "As we continue to focus on integrating and realizing the value of the ***Actavis Generics transaction, which is progressing according to plan***, Dipankar and his team will focus on generating organic growth through new launches and replenishing the pipe line through our industry-leading R&D, and drive efficiencies across the generics organization...."

> . . . . [Dipankar] Bhattacharjee[, Teva's President and CEO, Global Generic Medicines Group stated:] "***With the integration of Actavis proceeding on schedule*** and the complementary U.S. distribution capabilities provided by our recent acquisition of Anda, we have a matchless opportunity to add value in the U.S. healthcare system, and in the fast-changing global generics marketplace."

21. On February 13, 2017, Teva filed a report on Form 6-K with the SEC reporting the Company's financial and operating results for the quarter ended December 31, 2016.

22. In a conference call the same day, defendants made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> [Peterburg:] The Company's priorities continue to be extracting all synergies related to the Actavis generic acquisition, successfully launching the key generic and specialty products we have planned for 2017, and generating significant cash flow to rapidly pay down our existing debt to maintain a strong balance sheet.

> We are reiterating our guidance for 2017, including our earnings per share of $4.90 to $5.30. We are very committed to this EPS range, and the management team and I will do what it takes to protect it, including additional cost reduction if necessary.

*      *      *

[Desheh :] The increase in our operating profit was driven mainly by our generic business, following the closing of the Actavis transaction.

*      *      *

Total sales were $93 billion, **with significant growth in goodwill and intangible assets, resulting from the progress made on the Actavis acquisition versus price allocation.**

23.     On February 15, 2017, Teva filed an Annual Report on Form 20-F for the quarter and year ended December 31, 2016 with the SEC (the "2016 20-F").

24.     In the 2016 20-F, Teva made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> In August 2016, we completed the Actavis Generics acquisition. Our strong legacy generics business, combined with the Actavis Generics business, has a world-leading product portfolio, comprehensive R&D capabilities, robust product pipeline and an efficient global operational network. The combined generic business has a wide-reaching commercial presence, as the market leader in the United States and a top three leadership position in over 40 countries, including some of our key European markets. The combined business benefits from a leading and diverse pipeline of products, which will help us continue executing key generic launches and further expand our product pipeline, focusing on both large and small opportunities. We expect that a larger number of smaller but more durable launches will help offset expected price erosion while diversifying our revenue stream.

*      *      *

> In August 2016, we completed our acquisition of Allergan plc's worldwide generic pharmaceuticals business ("Actavis Generics"). At closing, we paid Allergan consideration of approximately $33.4 billion in cash and approximately 100.3 million Teva shares. The acquisition significantly expanded our generics product portfolio and pipeline, R&D capabilities and global operational network.

*      *      *

> Significant highlights of 2016 included:

> • In August 2016, we completed our acquisition of Actavis Generics.

7

> The acquisition had a significant impact on our generic medicines segment, expanding our product portfolio and pipeline, R&D capabilities and global operational network.

25.     The 2016 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by defendants Peterburg and Desheh, stating that the financial information contained in the 2016 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On May 11, 2017, Teva filed a report on Form 6-K with the SEC reporting the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 6-K").

27.     In the Q1 2017 6-K, Teva made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> On August 2, 2016, Teva consummated its acquisition of Allergan pie's ("Allergan") worldwide generic pharmaceuticals business ("Actavis Generics"). At closing, Teva transferred to Allergan consideration of approximately $33.4 billion in cash and approximately 100.3 million Teva shares. The acquisition significantly expanded Teva's generics product portfolio and pipeline, R&D capabilities and global operational network.

28.     In a conference call the same day, defendants made the following false and misleading statements concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> [Peterburg:] As it relates to our first priority, ***I'm pleased to report the synergies related to the Actavis Generics acquisition and additional cost reduction, which the company has identified, is now on track to realize cumulative net synergies and cost reduction of approximately $1.5 billion by the end of 2017.***
>
> *        *        *
>
> Turning to generics. It has been 2 full quarters since the completion of our acquisition of Actavis Generics. ***The acquisition has provided us with***

8

*many benefits*, especially much stronger and broader R&D capabilities, which we believe are the engine for any substantial generic business. This is essential in today's world when we are operating across such an evolving competitive landscape and ongoing consolidation across our customer base. We are very confident that the global business we have built will allow Teva to thrive in the long-term future as a leader in the generics industry.

[Desheh:] The increase in our operating profit was driven mainly by our generic business, following the closing of the Actavis transaction.

29.     The statements referenced above were materially false and misleading. Considered as a whole, defendants' representations misled investors by presenting a materially false and misleading picture of Teva's business, financial results and operations by, among other things, failing to disclose and actively concealing the negative impact resulting from the acquisition and integration of Actavis Generics on the Company's financial results and business prospects.

30.     On August 3, 2017, Teva filed a report on Form 6-K with the SEC reporting the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 6-K"). In the press release attached as an exhibit to the Q2 2017 6-K, Teva made the following disclosures concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

> "*Second quarter results were lower than we anticipated due to the performance of our U.S. Generics business. . . . These factors also led to a lowering of our outlook for the remainder of the year* . . . ," stated Dr. Yitzhak Peterburg.... "In our U.S. Generics business, we experienced accelerated price erosion and decreased volume mainly due to customer consolidation, greater competition as a result of an increase in generic drug approvals by the U.S. FDA, and some new product launches that were either delayed or subjected to more competition."

> *            *            *

> During the second quarter of 2017, Teva identified certain developments in the U.S. market that caused it to revisit management's assumptions regarding the market dynamics of the U.S. generics unit. *Based on the revised discounted cash flows analysis, the Company recorded a goodwill impairment charge of $6.1 billion related to the U.S. generics reporting unit in the second quarter of 2017.*

9

\*      \*      \*

We have lowered our outlook for 2017 Non-GAAP results to revenues of $22.8 - $23.2 billion, from a previously expected range of $23.8 - $24.5 billion. Non-GAAP EPS for 2017 is now expected to be $4.30-$4.50, based on a weighted average number of shares of 1,076 million, down from a previously expected range of $4.90- $5.30.

This adjusted outlook takes into consideration the impact of increased price erosion in our U.S. Generics business, which is expected to be in a high single digits rate through the remainder of the year, and delays in generic launches in the U.S.

31.     In a conference call the same day, Teva made the following disclosures concerning the financial impact of the Actavis acquisition and integration on the Company's business prospects and reported financials:

[Peterburg:] On a GAAP basis, we are reporting today an EPS loss for the second quarter of $5.94. ***This loss is primarily the result of a $6.1 billion impairment charge to reduce goodwill associated with our U.S. Generics business unit, which includes both the Teva legacy business and the Actavis Generics business.*** This impairment reflects our revised outlook for the business given the trends we are seeing in the market, as I have just articulated.

\*      \*      \*

[Michael McClellan, Teva's Interim CFO:] ***The goodwill impairment was the main driver of the changes in our balance sheet, and you can see the goodwill went down by $5 billion. This is the $6.1 billion impairment, offset by $1 billion, which was reallocated to goodwill in the final Actavis purchase price allocation, as we closed the purchase price allocation as of June 30.*** There was also a corresponding reduction in our shareholders' equity for the charge of the goodwill impairment.

**LOSS CAUSATION**

32.    The markets for Teva securities (common stock and ADSs) were open, well-developed and efficient at all relevant times. During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market that artificially inflated the price of Teva securities. Defendants misled investors about Teva's financial health and performance and its prospects for future financial success by failing to disclose the negative impact resulting from the acquisition and integration of Actavis Generics to the Company's financial results and business prospects. As a result, Teva's public statements were materially false and misleading at all relevant times.

33.    Later, when defendants' prior misrepresentations and fraudulent conduct were absorbed by the market, the prices of Teva securities fell significantly, as the prior artificial inflation came out of the prices over time. Specifically, on August 3, 2017, Teva announced lower than anticipated second quarter results due to the performance of its U.S. generics business. The Company further recorded a goodwill impairment charge of $6.1 billion in the second quarter of 2017 related to the Company's acquisition of Actavis. Defendants also indicated that Teva's U.S. generics business, due to "accelerated price erosion" and delays in U.S. generic launches, was a key factor in lowering Teva's future guidance and cutting its dividend by 75%. On this news, Teva shares dropped from a closing price $31.25 per ADS on August 2, 2017 to a new 52-week low closing price $20.60 per ADS on August 4, 2017, on heavy two-day trading volume.

34.    Each disclosure of adverse fact that removed inflation from Teva's share prices was connected to defendants' false statements and omissions and the fraudulent conduct alleged herein. The timing and magnitude of the decline in Teva's share prices negates any inference that the loss suffered by plaintiff was caused by changed market conditions, macroeconomic or industry factors

or Company-specific facts unrelated to the defendants' fraudulent conduct. As a direct result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, plaintiff has suffered significant losses and damages.

## NO SAFE HARBOR

35.    Teva's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

36.    The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Teva who knew that the FLS was false.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

37.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Teva securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company's securities were traded on both the TASE and NYSE and were covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- plaintiff purchased, acquired and/or sold Teva securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38.     Based upon the foregoing, plaintiff is entitled to a presumption of reliance upon the integrity of the market.

39.     Alternatively, plaintiff is entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), as defendants omitted material information in their financial statements in violation of a duty to disclose such information, as detailed above.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired Teva ADSs and/or common stock during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein and their immediate families, the officers and directors of the Company, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Teva securities were actively traded on the NYSE in an efficient market. While the exact number of Class members is unknown to plaintiff at this time and can be ascertained only through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Teva or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business prospects, operations, management, and financial results of Teva;

- whether the Individual Defendants caused Teva to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Teva securities during the Class Period were artificially inflated because of defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violations of § 10(b) and Rule 10b-5 Promulgated
### Thereunder Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against defendants and is based upon § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, defendants carried out a plan, scheme, conspiracy and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon plaintiff and the other members of the Class; made various untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members as alleged herein; (ii) artificially inflate and maintain the market prices of Teva securities; and (iii) cause plaintiff and other members of the Class to purchase or otherwise acquire Teva securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the

defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Teva securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Teva's business practices.

51.     By virtue of their positions at Teva, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Teva, the Individual Defendants had knowledge of the details of Teva's internal affairs.

53.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of Teva's statements. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate and truthful information with respect to Teva's business practices. As

a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market prices of Teva securities were artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Teva's business and financial condition, which were concealed by defendants, plaintiff and the other members of the Class purchased or otherwise acquired Teva securities at artificially inflated prices and relied upon the prices of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

54.     During the Class Period, Teva securities were traded on active and efficient markets. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Teva securities at prices artificially inflated by defendants' wrongful conduct. Had plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by plaintiff and the Class, the true value of Teva securities was substantially lower than the prices paid by plaintiff and the other members of the Class. The market prices of Teva securities declined sharply upon public disclosure of the facts alleged herein to the injury of plaintiff and the other Class members.

55.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period upon the revelation of the corrective disclosures to the investing public.

## COUNT II

### For Violations of §20(a) of the Exchange Act Against All Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of Teva and conducted and participated in the conduct of, directly and indirectly, Teva's business affairs. Because of their senior positions, they knew the adverse non-public information about Teva's business practices.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Teva's financial condition and results of operations, and to correct promptly any public statements issued by Teva which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings that Teva disseminated in the marketplace during the Class Period concerning Teva's results and operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Teva to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Teva within the meaning of §20(a) of the Exchange Act. In this capacity, they participated in the alleged unlawful conduct, which artificially inflated the market prices of Teva securities. Teva, in turn, controlled the Individual Defendants and all of its employees.

61.     By reason of the above conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendants as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Requiring defendants to pay damages sustained by plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  August 30, 2017                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Keith R. Lorenze, Esq. (PA ID: 205689)
Jacob A. Goldberg, Esq. (PA ID: 66399)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel:  (215) 600-2817
Fax: (212) 202-3827
klorenze@rosenlegal.com
jgoldberg@rosenlegal.com

and

19

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
(212) 697-6484

*Attorneys for Plaintiff*

**Submission Date**

2017-08-28 11:12:42

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against Teva Pharmaceutical Industries Limited ("Teva" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Teva securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Teva securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Teva securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Barry Baker

## Acquisitions

**Configurable list (if none enter none)**

(redacted)

# Sales

**Configurable list (if none enter none)**

(redacted)

# Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**

(redacted)

**Your Message**

(redacted)

**Signature**

**Full Name**

Barry Baker

(redacted)

**Teva Pharmaceutical Industries Limited  (TEVA)**                                      **Baker, Barry**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 12/23/16 | Purchase | 72 | $36.7173 |
| 1/27/17 | Purchase | 70 | $34.5172 |
| 2/8/17 | Purchase | 90 | $32.2000 |